IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 97-60598
_____


DENNIS J. KRYSTEK,

Plaintiff-Appellee,

versus

UNIVERSITY OF SOUTHERN MISSISSIPPI,

Defendant-Appellant.

*****************************************************************
_____

No. 97-60824
_____


DENNIS J. KRYSTEK,

Plaintiff-Appellee,

versus

UNIVERSITY OF SOUTHERN MISSISSIPPI,

Defendant-Appellant.

_____

Appeals from the United States District Court for the
Southern District of Mississippi
_____
January 14, 1999
Before JOLLY, BARKSDALE, and BENAVIDES, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Dennis J. Krystek was an assistant professor at the University of Southern Mississippi ("USM") who was denied tenure because he failed to publish any scholarly work. He sued USM, alleging discrimination based on gender, arguing that women were held to a lesser standard. A jury agreed and found that USM violated Title VII of the Civil Rights Act of 1964 by denying him tenure. On appeal, USM argues that (1) there was insufficient evidence to support the jury's verdict and (2) Krystek failed to file a timely complaint with the Equal Employment Opportunity Commission ("EEOC"). Because we find the evidence insufficient to support a jury verdict, we decline to address the second issue.

I

At USM, full-time, tenure-track faculty members go through a five- to seven-year review process before achieving tenure--an expectation of continuing employment for an indefinite period. The criteria for making tenure is set out in the Faculty Handbook: "sustained quality performance in the three university missions of teaching, research or other creative activity, and service, with the expectation that the candidate will achieve a high level of performance in two of these categories." The second category, research, essentially is a requirement to publish scholarly work. Although USM's College of Liberal Arts Tenure and Promotion Policy lists a number of other research-related endeavors for which tenure candidates will receive credit, at the top of the list are

2

"[b]ooks, monographs, chapters, essays, reviews and other scholarly work published by reputable journals, scholarly presses, and publishing houses that accept works only after rigorous professional review."

During the probationary period for tenure, the candidate receives annual evaluations, a third year comprehensive review, a fifth year review that usually coincides with a review for promotion to associate professor, and, if necessary, a subsequent sixth or seventh year review. If a candidate is not awarded tenure by the seventh year, the eighth year is the last year of the candidate's employment contract.

Dennis Krystek was hired by the political science department at USM as a visiting assistant professor in 1988. In 1989, when his one-year appointment expired, he was hired into a tenure-track position, as an assistant professor in that department. In 1991, he postponed his third year review. His evaluation for that year noted that he needed to devote more time to research. In 1992, Krystek received his third year review. In the interim, he had published a short, six-page article in the Louisiana Bar Journal. Although the article was treated as a promising sign, his evaluation nevertheless stressed his need to publish articles in order to receive tenure. In 1993, his evaluation again noted that he needed to work on publishing and that publishing should be a priority for him. In 1994, he published another six-page article

3

with the Louisiana Bar Journal.  He still had not published a full-length article or any of the other types of scholarly works listed in the College Of Liberal Arts Tenure and Promotion Policy.

In October 1994, he applied for tenure and promotion to associate professor.  For a candidate in Krystek's department, the application is first reviewed by the candidate's tenured departmental faculty, then by the College Advisory Committee, the Dean of the College, the University Advisory Committee, and jointly by the Vice President for Academic Affairs and the Vice President for Research and Planning.  Recommendations are made by each party that reviews the application and those recommendations and the candidate's dossier are ultimately reviewed by the President.  If the President believes the candidate merits tenure, he makes that recommendation to the Board.  If the Board agrees, tenure and promotion are awarded.

In Krystek's case, the department recommended him for tenure but not for promotion.  The negative recommendation was based solely upon Krystek's failure to publish scholarly work.  Because his department was concerned that his application for tenure would not be treated favorably at the higher levels of review, the department obtained permission from USM to give Krystek a two-year extension on his tenure-track so that he could improve his publication record.

4

Krystek chose not to take advantage of the two-year period to publish any significant scholarly work. Instead, a year later, in October of 1995, Krystek resubmitted his application although he had published only one piece, a two-page co-authored article in a USM public relations magazine. At that time, in his entire career at USM, indeed in his entire academic career, Krystek had published only two works that even he claimed met the requirement of being published in "reputable journals, scholarly presses, and publishing houses that accept works only after rigorous professional review." Those two articles were both six-page articles in the Louisiana Bar Journal. One article had twenty footnotes, the other sixteen.

When Krystek reapplied for tenure after only a year, and without having published a full-length article, the departmental faculty recommended against both tenure and promotion. Every other person who subsequently reviewed Krystek's application voted against both tenure and promotion with the exception of two of the five members of the College Advisory Committee, who recommended him for tenure. The President ultimately denied Krystek both promotion and tenure.

At some point during the process of Krystek's review, Krystek became convinced that the department had an ulterior motive for imposing publishing requirements on him. Krystek came to believe that the requirements were being imposed on him in order to deny him tenure because of his gender. The only potential evidence

Krystek had to support his belief was a comment made by the interim dean of his department, Jerold Waltman. Because this comment provides the basis for Krystek's complaint, it is necessary to determine the evidentiary value of this comment given the situation in which it was made. We consider this comment in context of all of the testimony at trial, but viewed in a light most favorable to Krystek.

Krystek went up for tenure in 1994 and his department voted for tenure but against promotion. At that point, two of his supporters were the dean of the department, Ron Marquardt, and the interim dean, Waltman. Both voted in favor of Krystek for tenure, though both were concerned about his publishing record. Because of their concern over Krystek's publishing record and the result of the vote, Waltman and Marquardt met with Krystek to discuss ways to improve his chance for tenure. It was at this meeting that Waltman and Marquardt suggested that Krystek take a two-year extension to publish more articles. At the meeting, Marquardt also recommended that Krystek not teach over the summer but instead devote his time to writing. Krystek ultimately declined to pursue this suggestion. Finally, Marquardt and Waltman both offered to proofread any of Krystek's work and Marquardt offered to do what he could to assist Krystek in getting work published.

At this meeting, Krystek complained that another assistant professor, Kathanne Greene, had gotten tenure.

At trial, Krystek testified that Waltman responded, "That's a problem.  There are different standards for males and females." Krystek further stated that Dr. Marquardt said nothing in response to this comment and that the conversation then turned to another topic.  At trial, Waltman admitted to making a comment to that effect, but was unclear about whether he made that comment at the meeting with Marquardt or at some other time.  Waltman did remember Krystek complaining about Greene.  He testified that he recalled trying to redirect the conversation toward what Krystek needed to do to get tenure.  At trial, his explanation for the remark was that he was expressing a general belief that men and women are treated differently, not a belief about Krystek's treatment in this case.

Marquardt testified that he has no recollection of such a comment being made in his presence.  When Marqaurdt and Waltman discovered that Krystek had made claims about discrimination on the basis of gender, both abstained from participating in any further employment decisions with respect to Krystek.

Based on Waltman's comment, Krystek concluded that two female members of the faculty were treated more favorably than he was.  He believes that Gail Lucas, who was not on tenure-track, was not held to the same requirements that he was.  He also believes that Greene, an assistant professor on tenure-track, was held to a lower standard regarding her research.  Greene had had a full-length

7

article accepted for publication at the time she was granted tenure, but she had not published any full-length articles while an assistant professor at USM. Before working at USM, however, Greene published her doctoral thesis as a book.

## II

On March 31, 1995, Krystek filed a charge of discrimination with the EEOC, alleging that he was denied promotion and tenure because of his gender. On October 31, 1995, the EEOC issued its notice of a right to sue. On January 25, 1996, Krystek filed suit in Mississippi state court, alleging a violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, <u>et seq.</u> USM removed to federal district court. However, it was not until October 8, 1996, that the President of USM finalized USM's decision not to promote or tenure Krystek. The case was tried before a judge and jury in May of 1997.

At the conclusion of USM's case, USM moved for a judgment as a matter of law. The court denied the motion. USM renewed the motion before the case was submitted to the jury. Again, the court denied the motion.

After deliberation, the jury returned the following verdict:

> Question No. 1: Do you find by a preponderance that plaintiff's gender was a motivating factor in the decision of the defendant to terminate the plaintiff? Yes.
> Question No. 2: Do you find by a preponderance of the evidence that the defendant, University of Southern Mississippi, would have made the same employment decision

concerning the plaintiff even if unlawful motive, namely plaintiff's gender, was not present?  Answer: No.
      Question No. 3: What amount of money, if any, if paid now in cash, would adequately compensate the plaintiff?  Answer in dollars and cents for damages, if any, or answer "None."  Answer: None.

The court ordered USM to reinstate Krystek to the position of assistant professor and enjoined USM from making employment decisions regarding Krystek on the basis of his gender.  USM moved for judgment as a matter of law and again the court denied USM's motion.  USM then filed a timely appeal.

                              III

    The issue before us is whether the district court erred in refusing to grant USM's Rule 50 motion for judgment as a matter of law.  We review such a decision under the standards set forth in Boeing Co. v. Shipman, 411 F.2d 365 (5th Cir. 1969), and adopted by Rhodes v. Guiberson Oil Tools, 75 F.3d 989 (5th Cir. 1996), in the context of employment discrimination cases:

> Under Boeing, "[t]here must be a conflict in substantial evidence to create a jury question."  Substantial evidence is defined as "evidence of such quality and weight that reasonable and fair minded men in the exercise of impartial judgment might reach different conclusions."  Consequently, "[a] mere scintilla of evidence is insufficient to present a question for the jury."  Even if the evidence is more than a scintilla, "Boeing assumes that some evidence may exist to support a position which is yet so overwhelmed by contrary proof as to yield to a directed verdict."

Id. at 993 (citations omitted).

Under Title VII, it is unlawful "for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Krystek presents two arguments to support his claim that USM discriminated against him. First, Krystek argues that Waltman's comments amount to evidence of direct discrimination--that the comments in and of themselves amount to evidence that the decision to deny tenure was motivated by gender. Second, Krystek argues that the disparate treatment he received from USM, when compared to that received by Lucas and Greene, demonstrates that the decision was motivated by gender.

A

Krystek's first argument can be dismissed as a matter of law. Under our well established case law, the most that Waltman's comment can amount to is a stray remark in the workplace. We addressed this issue in Brown v. CSC Logic, Inc., 82 F.3d 651 (5th Cir. 1996), where we noted that, in order for comments in the workplace to provide sufficient evidence of discrimination, they must be "1) related [to the protected class of persons of which the plaintiff is a member]; 2) proximate in time to the terminations; 3) made by an individual with authority over the employment

10

decision at issue; and 4) related to the employment decision at issue." Id. at 655.

There is no dispute that Waltman's comments were made two years prior to the actual decision to deny Krystek tenure. Nor is there any dispute over the fact that Waltman did not participate in the ultimate decision to deny Krystek tenure. Finally, Waltman's remarks represent only his perception of how tenure decisions were being made at that time. There is no evidence in the record that Waltman actually sought to enforce a different standard for men rather than women, let alone that he exercised undue influence on others at USM to do so. Indeed, there is no evidence, despite adequate discovery, that such a policy or practice was ever applied at the university, beyond the allegations specifically cited in Krystek's individual case. Barring such evidence, Waltman's comments must be regarded as stray remarks. In this case, Waltman was far removed from the final decision to grant tenure--a decision that involved votes from twenty different members of USM. Waltman's comments are not probative evidence that the school's decision in Krystek's case was motivated by gender.

B

Krystek's second argument--that he received disparate treatment--requires a closer consideration of the jury's role as fact-finder in Title VII cases. In St. Mary's Honor Center v. Hicks, 509 U.S. 502 (1993), the Supreme Court addressed the issue

11

of assessing a motion for judgment as a matter of law in the light of the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). The court stated that: "The fact finder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination. Thus, rejection of the defendant's proffered reasons will permit the trier of fact to infer the ultimate fact of intentional discrimination." Hicks, 509 U.S. at 511.

In Rhodes, we stated that, in an employment discrimination case, in order for the plaintiff to prevail, the evidence taken as a whole must "(1) create[] a fact issue as to whether each of the employer's stated reasons was what actually motivated the employer and (2) create[] a reasonable inference that . . . [the plaintiff's membership in a protected class] was a determinative factor in the actions of which plaintiff complains." Rhodes, 75 F.3d at 994. The district court must therefore grant a motion for judgment as a matter of law "if the evidence put forth by the plaintiff to establish the prima facie case and to rebut the employer's reasons is not substantial." Id.

We therefore review the jury's fact-finding role, and the judge's denial of USM's Rule 50 motion, to determine if substantial evidence supports Krystek's claims that he was denied tenure

12

because he was a male and that USM's stated reason for denying him tenure is pretextual. When considering the evidence in support of Krystek's claims, "we view all the evidence in the light most favorable to the verdict." Id. at 995 (citing Boeing, 441 F.2d at 374).

IV

In the case at hand, there is neither substantial evidence to rebut USM's stated reason for denying tenure nor substantial evidence to support a finding that Krystek's denial of tenure was motivated by his gender.

In Tanik v. Southern Methodist University, 116 F.3d 775 (5th Cir. 1997), we recently set forth the necessary elements for establishing that a denial of tenure amounts to discrimination. "The plaintiff must show that: (1) he belongs to a protected group, (2) he was qualified for tenure, and (3) he was denied tenure in circumstances permitting an inference of discrimination." Id. at 775. In the context of a Rule 50 motion, if a university can show that any evidence of gender discrimination, "viewed against the background of the university's evidence, is inadequate to produce an evidentiary conflict strong enough to survive a Rule 50 attack," the university is entitled to a verdict in its favor. Travis v. Board of Regents of the University of Texas System, 122 F.3d 259, 264 (5th Cir. 1997). In this case, the evidence as a whole, viewed in a light most favorable to the verdict, simply does not establish

either that Krystek was qualified for tenure or that Krystek was denied tenure in circumstances that permit an inference of discrimination.

The evidence Krystek marshals to his cause is simply not substantial enough to permit an inference of discrimination. Krystek argues that he was qualified for tenure, but the evidence clearly indicates that Krystek failed to meet an established USM tenure requirement: publishing scholarly work in "reputable journals, scholarly presses, and publishing houses that accept works only after rigorous professional review."

Krystek cannot point to a single tenured faculty member who has not published scholarly work. Krystek also claims that his two publications meet the requirement of having published scholarly works "by reputable journals, scholarly presses, and publishing houses that accept works only after rigorous professional review." However, even in a light most favorable to the verdict, there can be no argument that a six-page article containing minimal citation to other scholarly work meets this requirement. In fact, Krystek admitted in his testimony that the articles were not peer-reviewed articles.

Krystek could still establish that he was treated differently from women in his department, thereby calling into question the validity of the tenure qualification. However, there is no evidence that Krystek was treated differently from female

14

tenure-track assistant professors. Krystek cannot point to a single similarly situated assistant professor who was awarded tenure despite not publishing scholarly work.

Krystek points to the fact that Lucas, a nontenure-track teacher, was not required to publish. However, this fact is irrelevant as Lucas was not similarly situated to Krystek. <u>See, e.g</u>, <u>Nieto v. L&H Packing Co.</u>, 108 F.3d 621, 623 (5th Cir. 1997) (holding that plaintiff's disparate treatment case fails where plaintiff compared his treatment to another employee but could not show that other employee was similarly situated). Lucas was not on tenure-track and therefore ineligible for the benefits that tenure confers on faculty members. Furthermore, there is nothing in the record to indicate that Krystek sought and was denied a position similar to Lucas's.

Krystek also points to Greene as an example of an assistant professor who was not required to publish during her time at USM. Greene, however, actually had published a book prior to teaching at USM. Krystek argues that Greene's book was her dissertation, and that his dissertation was available in a bound volume also. The record, however, clearly indicates that although his dissertation was turned into a bound volume, it was never published by a publishing house that subjected his work to professional review. The record is equally clear that Greene's book was.

15

There can be no substantial evidence permitting an inference of discrimination when there is no evidence of disparate treatment and no direct evidence of discrimination. In this case, Krystek could not produce a female professor who was treated differently than he was. For the reasons stated above, the plaintiff's attempt to characterize Waltman's remarks as direct evidence of discrimination also fail. Even when viewed in a light most favorable to the verdict, the evidence simply does not permit a reasonable inference that Krystek's gender was a determinative factor in USM's decision to deny tenure.

Krystek was repeatedly encouraged to publish a full-length article. He was apparently either unwilling or unable to do so. There is no evidence that his colleagues did not face similar pressures in their efforts to attain tenured positions nor is there any evidence that, having failed to meet this requirement, female assistant professors were nonetheless granted tenure. The evidence in this case therefore simply does not amount to the kind of "evidence of such quality and weight that reasonable and fair minded men in the exercise of impartial judgment might reach different conclusions." Boeing, 411 F.2d at 374.

We accord great deference to a jury's finding of facts. Nevertheless, when confronted with a case like this one where the evidence simply does not support the jury's findings but rather the position of the losing party, the court must grant judgment as a

16

matter of law in favor of that party.  Title VII is designed to ensure that persons of different gender are treated equally. Where, as here, an assistant professor <u>has</u> been treated equally and <u>has</u> been held to the same standards applied to every other tenure-track faculty member at the university, he may not seek refuge under Title VII simply because he is unable or unwilling to meet the minimum requirements for tenure.

V

Our holding in <u>Rhodes</u> requires judgment as a matter of law when "the evidence put forth by the plaintiff to establish the prima facie case and to rebut the employer's reasons is not substantial." <u>Rhodes</u>, 75 F.3d at 994.  The evidence in this case, even in a light most favorable to the jury verdict, establishes that Krystek's denial of tenure was not motivated by his gender but instead by Krystek's inability to publish scholarly work.  We therefore hold that the district court erred in denying USM's Rule 50 motion.  Because we conclude that there was insufficient evidence to support a jury verdict in Krystek's favor, we decline to address USM's argument that Krystek failed to timely file an EEOC complaint.

For the foregoing reasons, the district court's judgment is

REVERSED and
REMANDED for entry of judgment for the defendant.

17