COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.  2-05-104-CV

 

 

XUXIAN NIU                                                                       APPELLANT

 

                                                   V.

 

REVCOR MOLDED PRODUCTS                                                APPELLEES

COMPANY
AND ROB KNIGHT

 

                                              ------------

 

           FROM
THE 153RD DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

I.      Introduction

In this employment
discrimination suit, Appellant Xuxian Niu appeals from the trial court=s summary judgment in favor of Appellees Revcor Molded Products
Company (Revcor) and Rob Knight.  We
affirm.

II.     Background








Knight is Revcor=s vice president of manufacturing. 
In March 2001, Knight hired Niu, a Chinese American, as Revcor=s manufacturing engineering manager. 
Niu=s job duties
included, among other things, supervising the manufacturing engineering group,
leading the Alean
manufacturing process,@ and
developing and implementing the design and manufacture of new products.  Niu reported directly to Knight, who awarded
him two discretionary pay raises during his first year of employment.  In November 2002, however, Revcor terminated
Niu=s employment. 

Niu filed suit against Revcor
and Knight for employment discrimination, intentional infliction of emotional
distress, racial harassment, and retaliation. 
Revcor and Knight then filed a traditional motion for summary judgment,
supported by various summary judgment evidence, including the affidavits of
Knight and Larry Brigman, vice president of human resources, and excerpts from
the depositions of Brigman, Knight, and Niu.  


According to Brigman=s affidavit, in 2001, Revcor had suffered losses of approximately $1.2
million; therefore, it was forced to lay off fifty employees.  In 2002, despite turning a profit of
approximately $380,000, Revcor laid off five more employees.  Ultimately, Niu was terminated, according
to Knight=s affidavit
and deposition, because the lean manufacturing integration process had been
completed and his skills were geared toward preparing and developing new
products, an area for which there was a bleak business forecast at the end of
2002 and for 2003. 








Niu filed a response to
Revcor=s and Knight=s motion for
summary judgment, which was also supported by summary judgment evidence,
including Niu=s own
affidavit.  According to Niu=s affidavit, Knight and Kerry Burton, another employee, ridiculed his
Chinese accent throughout his employment with Revcor.  Niu stated under oath that on February 20,
2002, he complained to Knight about the comments; however, Knight responded by
telling him Ato speak
standard English@ and Ato not speak like a Negro.@  Further, Niu averred that
Knight stated that AKerry Burton
was his right handed [sic] man and that [Niu] needed to treat him like [his]
boss.@  








Niu also averred that
subsequently, on March 18, 2002, he received a written warning for Acombating his associates.@  Then again on May 23, 2002,
Niu received two written warnings, one for comments made to a subordinate
employee and one for unprofessional conduct during meetings.[1]  Niu stated in his affidavit that immediately
after the reprimands on May 23, he again complained to Knight in the presence
of Staci Coffman from human resources that Knight was treating him differently
than other employees.  According to Niu,
Knight and Coffman had no response to the allegation.[2]  Niu stated that his employment for Revcor was
ultimately terminated on November 22, 2002. 

The trial court granted
Revcor and Knight=s motion for
summary judgment as to all causes of action. 
In two points, Niu challenges the grant of summary judgment in favor of
Revcor on his discrimination and retaliation causes of action.[3]  

III.     Discussion

A.     Standard of Review








In a summary judgment case,
the issue on appeal is whether the movant met the summary judgment burden by
establishing that no genuine issue of material fact exists and that the movant
is entitled to judgment as a matter of law. 
Tex. R. Civ. P. 166a(c); Sw.
Elec. Power Co. v. Grant, 73 S.W.3d 211, 215 (Tex. 2002); City of
Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 678 (Tex. 1979).  In reviewing a summary judgment, we accept as
true all evidence favorable to the nonmovant, indulging every reasonable
inference and resolving any doubts in the nonmovant's favor.  Valence Operating Co. v. Dorsett, 164
S.W.3d 656, 661 (Tex. 2005).  

A defendant who conclusively
negates as a matter of law at least one element of each of the plaintiff=s theories of recovery or pleads and proves as a matter of law each
element of an affirmative defense is entitled to summary judgment on that
claim.  IHS Cedars Treatment Ctr. of
DeSoto, Tex., Inc. v. Mason, 143 S.W.3d 794, 798 (Tex. 2004);
Rhone-Poulenc, Inc. v. Steel, 997 S.W.2d 217, 223 (Tex. 1999).  Once the defendant produces sufficient
evidence to establish the right to summary judgment, the burden shifts to the
plaintiff to come forward with competent controverting evidence raising a
genuine issue of material fact with regard to the element challenged by the
defendant.  Centeq Realty, Inc. v.
Siegler, 899 S.W.2d 195, 197 (Tex. 1995).

B.     Discrimination

In his first point, Niu
contends that the trial court erred by granting summary judgment in favor of
Revcor on his claim of intentional racial discrimination.  Niu argues that Revcor failed to establish as
a matter of law a nondiscriminatory reason for his termination and that he
thoroughly rebutted Revcor=s proffered nondiscriminatory reason. 

 








1.     Applicable Law

Under Texas Labor Code
section 21.051, an employer commits an unlawful employment practice if because
of race, the employer Afails or
refuses to hire an individual, discharges an individual, or discriminates in
any other manner against an individual in connection with compensation or the
terms, conditions, or privileges of employment.@  Tex. Lab. Code Ann. ' 21.051(1) (Vernon 2006).  The
Texas Legislature modeled chapter 21 of the Texas Labor Code after federal law
for the express purpose of carrying out the policies of Title VII of the Civil
Rights Act of 1964 and its subsequent amendments.  Id. ' 21.001(1); Herbert v. City of Forest Hill, 189 S.W.3d 369, 374
(Tex. App.CFort Worth
2006, no pet.); Shear Cuts, Inc. v. Littlejohn, 141 S.W.3d 264, 269
(Tex. App.CFort Worth
2004, no pet.).  Consequently, when
reviewing an issue brought under chapter 21, we may look not only to cases
involving the state statute, but also to cases interpreting the analogous
federal provisions.  Caballero v.
Cent. Power & Light Co., 858 S.W.2d 359, 361 (Tex. 1993); Herbert,
189 S.W.3d at 374-75; Shear Cuts, Inc., 141 S.W.3d at 269.








The United States Supreme
Court has established a burden-shifting analysis in employment discrimination
cases.  See McDonnell Douglas Corp. v.
Green, 411 U.S. 792, 802-04, 93 S. Ct. 1817, 1824-25 (1973); Wal-Mart
Stores, Inc. v. Canchola, 121 S.W.3d 735, 739 (Tex. 2003).  When an employer moves for a traditional
summary judgment asserting a legitimate, nondiscriminatory reason for the
employee=s termination, the employer must prove that legitimate,
nondiscriminatory reason as a matter of law. 
M.D. Anderson Hosp. & Tumor Inst. v. Willrich, 28 S.W.3d 22,
24 (Tex. 2000).  After the employer
establishes a legitimate, nondiscriminatory reason, the burden then shifts to
the employee, as in other traditional summary judgment cases, to raise a fact
issue that the employer=s reasons
were a pretext for discrimination.  Id.  Thus, the employee can defeat a traditional
summary judgment motion by presenting evidence raising a fact issue on pretext
or by challenging the defendant=s summary judgment evidence as failing to prove, as a matter of law, a
legitimate, nondiscriminatory reason for the challenged employment action.  Id.

2.     Analysis








In its motion for summary
judgment, Revcor asserted that Niu was terminated because his skills were
geared toward preparing and developing new products, an area for which there
was a bleak business forecast at the end of 2002 and for 2003.[4]  In support of its motion, Revcor offered
Knight=s affidavit, in which he asserted,

Niu=s manufacturing engineering manager position was eliminated in
November, 2002 because the lean manufacturing integration process had been
completed, and the business forecast for 2003 was negative as far as new
product development was concerned.  Part
of Niu=s strength, in theoretical and injection molding, was geared toward
the development and implementation of new product design and manufacture. 

In addition, Revcor offered
Knight=s testimony, in which he again stated that Niu=s position was eliminated primarily because the lean manufacturing
integration process was completed and because the outlook for new products was
rather bleak.  Knight went on to explain,

[W]hen faced with that reality, you look at, okay, what staff do we
have and what=s the
best move for the company.  And when
comparing [Niu] to the manufacturing engineers that reported to him, his -- his
experience was mostly theory from an injection molding standpoint.  Their experience was more product related,
application engineering.  So when you
look at what work is going to be required in the future, their experience was
best suited to address the work that we saw coming up. 

 








To raise a
fact issue, Niu first asserted that a document entitled APlant Shut Down Schedule,@ addressing shut-down days and vacation days in the fourth quarter of
2002, undermined Revcor=s
position.  However, the record on appeal
does not contain an authenticated copy of the APlant Shut Down Schedule@ document.  Niu=s affidavit does not mention the document or attempt to authenticate
it.  Cf. Republic Nat=l Leasing Corp. v. Schindler, 717 S.W.2d
606, 607 (Tex. 1986) (holding trial court correct in considering documents
attached to properly prepared affidavit when affidavit stated attached
documents were true and correct copies of originals).  Thus, it has no probative value to defeat the
summary judgment.  See Tex. R. Civ. P. 166a(f); Medford v.
Medford, 68 S.W.3d 242, 247 (Tex. App.CFort Worth 2002, no pet.) (AUnauthenticated or unsworn documents, or documents not supported by
any affidavit, are not entitled to consideration as summary judgment evidence.@).








Second, Niu
pointed to evidence that he claimed showed that Revcor was not still losing
money in 2002 at the time he was terminated.[5]  But this evidence does not challenge Revcor=s primary contention that Niu=s position was eliminated because the lean manufacturing integration
process was completed and because the outlook for new products was bleak.  See Laxton v. Gap, Inc., 333 F.3d 572,
578 (5th Cir. 2003) (AThe
plaintiff must rebut each nondiscriminatory reason articulated by the employer.@); Clay v. Holy Cross Hosp., 253 F.3d 1000, 1007 (7th Cir.
2001); see also Kucera v. Humble ISD, No. 14-03-01200-CV, 2004 WL
2161827, at *2 (Tex. App.CHouston
[14th Dist.] Sept. 28, 2004, no pet.) (mem. op.).  To the contrary, Niu appears to agree that by
November 2002 when he was terminated, the lean manufacturing integration
process, which he led, was completed. 

Finally, Niu
attempted to raise a fact issue by pointing to several racial comments.  Niu first pointed to his own deposition
testimony, in which he stated that Knight ridiculed his accent at least fifty
times during the twenty-month period when he worked for Revcor.  Niu also submitted evidence that Knight made
racial comments or jokes to several other former Revcor employees.  Lastly, Niu pointed to the complaint he made
to Knight about Kerry Burton=s comments, to which Knight responded that Niu needed Ato learn to speak standard English,@ Ato not talk
like a Negro,@ and to
respect Burton as a boss.  








In order for
workplace comments to provide sufficient evidence of discrimination, those
comments must be (1) related to the plaintiff=s protected class, (2) proximate in time to the adverse employment
decision, (3) made by an individual with authority over the employment decision
at issue, and (4) related to the employment decision at issue.  Krystek v. Univ. of S. Miss., 164 F.3d
251, 256 (5th Cir. 1999); Elgaghil v. Tarrant County Junior Coll., 45
S.W.3d 133, 140 (Tex. App.CFort Worth 2000, pet. denied). 
Assuming for summary judgment review that Knight actually made all of
these remarks, the comments do not meet these criteria.  Most of the comments that Knight made to
former Revcor employees other than Niu occurred prior to Niu=s employment at Revcor.  The
specific comment that Niu alleged Knight made in response to his complaint was
made eight months prior to Niu=s termination.  See Nash v.
Blood & Tissue Ctr. of Cent. Tex., No. 03-03-00763-CV, 2004 WL 2900483,
at *7 (Tex. App.CAustin Dec.
16, 2004, no pet.) (mem. op.) (comment made approximately five months prior to
termination was not proximate in time to employment decision).  Furthermore, the evidence does not show that
any of the comments were related in any way to Niu=s termination.  See Krystek,
164 F.3d at 256; Elgaghil, 45 S.W.3d at 140; cf. Coastal Mart, Inc.
v. Hernandez, 76 S.W.3d 691, 696-97 (Tex. App.CCorpus Christi 2002, pet. dism=d by agr.) (holding remarks related to decision to terminate, and
therefore sufficient to support verdict of gender discrimination, when comments
regarded a woman=s preferable
performance).








We hold that
Revcor satisfied its burden to establish as a matter of law a legitimate,
nondiscriminatory reason for terminating Niu. 
See Tex. R. Civ. P.
166a(c); M.D. Anderson Hosp., 28 S.W.3d at 24.  Furthermore, we hold that Niu  failed to raise a fact issue concerning pretext.  See M.D. Anderson Hosp., 28 S.W.3d at
24.  Thus, the trial court did not err in
granting summary judgment in favor of Revcor on Niu=s claim of intentional racial discrimination.  Because Revcor proved a legitimate,
nondiscriminatory reason for terminating Niu, we need not consider Revcor=s argument challenging Niu=s prima facie discrimination case. 
See Tex. R. App. P.
47.1.  We overrule Niu=s first point.

C.     Retaliation

In his
second point, Niu contends that the trial court erred by granting the motion
for summary judgment in favor of Revcor on his retaliation claim.  

1.     Applicable Law








An employer
commits an unlawful employment practice if it retaliates against a person who
(1) opposes a discriminatory practice, (2) makes or files a charge, (3) files a
complaint, or (4) testifies, assists, or participates in any manner in an
investigation, proceeding, or hearing.  Tex. Lab. Code Ann. ' 21.055 (Vernon 2006).  The
elements of a retaliation claim are (1) the employee engaged in a protected
activity, (2) the employer took action against the employee, and (3) a causal
connection between the employee=s protected activity and the adverse employment decision.  Id.; Herbert, 189 S.W.3d at
376; McCoy v. Tex. Instruments, Inc., 183 S.W.3d 548, 555 (Tex.
App.CDallas 2006, no pet.).  A
burden-shifting analysis, similar to the wrongful-discharge burden-shifting
analysis, applies to retaliation claims. 
See Graves v. Komet, 982 S.W.2d 551, 554 (Tex. App.CSan Antonio 1998, no pet.).  And
like a  wrongful-discharge claim, an
employer is entitled to a traditional summary judgment motion on a retaliation
claim if it proves as a matter of law a legitimate, nondiscriminatory purpose
for the employment action.  See
Thomann v. Lakes Regional MHMR Ctr., 162 S.W.3d 788, 800 (Tex. App.CDallas 2005, no pet.).  Once the
employer establishes a legitimate nondiscriminatory reason for the action, the
burden shifts to the employee to either (1) present evidence raising a fact
issue on whether the reason given was a pretext for retaliatory action or (2)
challenge the employer=s summary
judgment evidence as failing to prove as a matter of law that the reason given
was a legitimate, nondiscriminatory reason. 
See McCoy, 183 S.W.3d at 556; Thomann, 162 S.W.3d
at 800.

2.     Analysis








As
previously discussed, Revcor asserted in its motion for summary judgment,
supported by Knight=s affidavit
and deposition, that Niu was terminated because his skills were geared toward preparing
and developing new products, an area for which there was a bleak business
forecast at the end of 2002 and for 2003. 
To raise a fact issue, Niu Aadopts and incorporates by reference@ the argument he made in response to his first point. 

As
previously explained, the record on appeal does not contain an authenticated
copy of the APlant Shut
Down Schedule@
document.  Thus, it has no probative
value to defeat the summary judgment.  See
Tex. R. Civ. P. 166a(f); Medford,
68 S.W.3d at 247.  Second, although Niu
pointed to evidence that he claimed showed that Revcor was not still losing
money in 2002 at the time he was terminated, the evidence does not challenge
Revcor=s primary contention that Niu=s position was eliminated because the lean manufacturing integration
process was completed and because the outlook for new products was bleak.  See Laxton, 333 F.3d at 578; Clay,
253 F.3d at 1007; see also Kucera, 2004 WL 2161827, at *2.  Finally, Niu attempted to raise a fact issue
by pointing to several racial comments made by Knight.   However, the evidence does not show that any
of the comments were related in any way to Niu=s termination.  See Krystek,
164 F.3d at 256; Elgaghil, 45 S.W.3d at 140.  And an employee=s subjective beliefs of retaliation are merely conclusions and do not
raise a fact issue precluding summary judgment in a retaliatory discharge
claim.  Tex. Div.-Tranter, Inc. v.
Carrozza, 876 S.W.2d 312, 314 (Tex. 1994).








To the
extent that Niu argues that reprimands Revcor issued to him will support a
retaliation claim, we disagree.[6]  An adverse employment action short of
discharge will support a claim for retaliation if a reasonable employee would
have found the challenged action materially adverse, which in this context
means it well might have dissuaded a reasonable worker from making or
supporting a charge of discrimination.  Burlington
N. & Santa Fe Ry. Co. v. White, 126 S. Ct. 2405, 2415 (2006) (holding
reassignment of employee from forklift duty to standard track laborer tasks and
thirty-seven day suspension without pay supported jury=s finding of retaliation).  An
action must be Amaterially
adverse@ because it is important to separate significant from trivial
harms.  Id.  The action is judged from the standpoint of a
reasonable employee because the standard for judging harm must be
objective.  Id.  The standard is general because the
significance of any given act of retaliation will often depend upon the
particular circumstances; A[c]ontext matters.@  Id.








Revcor
reprimanded Niu for Acombating
his associates@, making
inappropriate comments to a subordinate employee, and conducting himself unprofessionally
during meetings.  Revcor issued these
reprimands after Niu told Knight that he was offended by Knight=s ridiculing Niu=s accent and
six to eight months before Revcor terminated Niu. 

Niu
presented no evidence that the reprimands were related to his termination.  And taken by themselves, the reprimands
do  not rise to the level of adverse
employment action.  When viewed
objectively, they are not Amaterially adverse@; that is, we cannot say that they well might have dissuaded a
reasonable worker from making or supporting a charge of discrimination.  See id.  We therefore hold that the reprimands cannot
serve as a basis for Niu=s
retaliation claim.

We hold that
Revcor satisfied its burden to establish as a matter of law a legitimate,
nondiscriminatory reason for terminating Niu. 
Furthermore, we hold that Niu has failed to raise a fact issue
concerning whether Revcor=s legitimate
nondiscriminatory reason was a pretext for retaliation.  Thus, the trial court did not err in granting
summary judgment in favor of Revcor on Niu=s claim of retaliation.  We
overrule Niu=s second
point.

IV.    Conclusion

Having
overruled Niu=s two
points, we affirm the trial court=s judgment.

 

 

 

ANNE GARDNER

JUSTICE








PANEL A:   CAYCE, C.J.; GARDNER and WALKER, JJ.

 

DELIVERED: October 12, 2006











[1]Niu
also averred that on March 16, 2002, Knight attempted to Awrite
[him] up@;
however, after he disputed the reprimand, Knight tore up the document.  





[2]According
to Revcor=s and
Knight=s
summary judgment evidence, Revcor paid for Niu to attend a two-day seminar on
communication, provided him with an executive coach, and gave him a book
regarding effective communications styles in an effort to address complaints
from employees concerning Niu=s management style. 





[3]Niu
does not challenge the grant of summary judgment as to his intentional
infliction of emotional distress or racial harassment causes of action.  Furthermore, Niu no longer contends that
Knight should be held individually liable. 





[4]Niu
contends in his brief that Revcor also asserted in its motion for summary
judgment that the amount of Niu=s salary was a
nondiscriminatory reason for his termination. 
However, this does not appear to be so. 
In its summary judgment motion, Revcor merely notes in a parenthetical
that by eliminating Niu=s
position, it saved over $100,000 in salary and fringe benefits. 





[5]Niu
submitted his own affidavit, in which he averred, ARevcor
went from an economic loss of 1.2 million dollars in 2001 to a net profit of
$380,000.00  . . . after the expiration
of the first eleven periods of 2002.@  Niu also pointed to Brigman=s
affidavit, in which Brigman stated under oath that fifty employees were laid
off due to financial losses in 2001, yet only five employees were laid off in
2002.  Finally, Niu submitted Revcor=s
answers to interrogatories, in which Revcor stated that several of its salaried
employees received a 6.26% bonus in 2002 based solely upon Haltom City
operations. 





[6]It is
not clear that Niu so argues.