IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 11, 2008

Charles R. Fulbruge III
Clerk

No. 07-10809
Summary Calendar

ELISABETH S. BROCKIE,

Plaintiff-Appellant,

v.

AMERIPATH, INC.,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Texas
No. 3:06-CV-185

Before REAVLEY, SMITH, and BARKSDALE, Circuit Judges.
JERRY E. SMITH, Circuit Judge:[*]

Elisabeth Brockie sued her former employer, AmeriPath, Inc. ("Ameri-
Path"), for alleged sex discrimination under title VII of the Civil Rights Act of

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

1964. We affirm the summary judgment for AmeriPath.

I.

AmeriPath operates laboratories in various hospitals and employed Brockie as a pathologist whose responsibilities included testing patients' tissue and blood samples and reporting her diagnoses to the treating physician. On one occasion, Brockie reported a diagnosis of microscopic colitis to Dr. Steven Gadol after testing a colon specimen from one of his patients. Gadol took issue with the diagnosis, because he did not believe that Brockie had provided sufficient explanation.

After Gadol had explained his concern to Brockie, she decided to stand by her diagnosis. Gadol then spoke to Brockie's supervisor, Steven Hebert, also a pathologist, about his concern; Hebert reviewed the sample and agreed with Gadol that Brockie's diagnosis was not justified.

On another occasion, Gadol sent biopsies of a lesion found on a patient's rectum to AmeriPath's lab. Brockie reviewed the samples and rendered a diagnosis of rectal cancer. Gadol was not surprised by the diagnosis but was again disappointed with the lack of supporting detail in Brockie's report and by her failure to telephone Gadol and confirm his receipt of the report.

After complaining about the lack of detail, Gadol received an additional report containing more information and restating the diagnosis of rectal cancer. Gadol explained the diagnosis to the patient, who then consulted with an oncologist and ultimately had her rectum removed. Gadol later learned from the oncologist that the lesion was only precancerous and that Brockie had submitted to Gadol's office an amended report that changed her diagnosis from rectal cancer to a precancerous rectal polyp. Though it is likely the patient still would have required surgery, perhaps even removal of her rectum, the recommended treatment would have been different had the diagnosis initially been precancerous

rather than cancerous.

Gadol related this experience to Hebert and again expressed his disappointment at the lack of communication from Brockie, especially with regard to the change in diagnosis but also regarding the previous case. Gadol said he did not want Brockie to examine any more specimens from his patients.

Brockie also reviewed biopsies of breast tissue for Dr. Terre McGlothlin, who expressed concern to Hebert about Brockie's lack of communication. In particular, Brockie found no cancer in a specimen that had been expected to be cancerous and failed to telephone McGlothlin with the surprising results. Though Brockie's diagnosis was correct, the failure to communicate with McGlothin caused concern.

On a separate occasion, McGlothlin received a negative diagnosis from Brockie, but within forty-eight hours it was changed to positive. Again, Brockie failed to communicate with McGlothlin regarding the changed diagnosis, and McGlothlin expressed her displeasure to Hebert.

During this time, Brockie and her husband were divorcing; the legal proceedings required Brockie's attention, often during working hours. She spent significant time on the telephone and used the AmeriPath fax machine to address those personal issues.

It is uncontested that the above facts are true and that Hebert based his decision to fire Brockie on these facts. Hebert offers other reasons for firing Brockie, but their truth is contested, so they do not support summary judgment.

Although Brockie does not contest the above facts, she asserts that her sex is Hebert's true motivation for terminating her employment. She bases that assertion on a statement Hebert made to Virginia Petty, an AmeriPath human resources manager. During a private conversation with Petty, Hebert reportedly said, in a joking manner, that "Dr. Brockie had the reputation of being a 'streetwalker' and that the story at AmeriPath was that Brockie had financed her edu-

cation by being a 'streetwalker.'"

The district court concluded that Hebert's alleged "streetwalker" comment was a stray remark and did not qualify as direct evidence of discrimination. Brockie also failed to offer circumstantial evidence of discrimination. Thus, the court granted AmeriPath's motion for summary judgment.

## II.

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). An issue is material if a reasonable jury could return a verdict for the non-moving party. Roberson v. Alltel Info. Servs., 373 F.3d 647, 651 (5th Cir. 2004). "This Court reviews grants of summary judgment de novo, applying the same standard as the district court, viewing the evidence in a light most favorable to the non-movant." Fruge ex rel. Fruge v. Parker Drilling Co., 337 F.3d 558, 560 (5th Cir. 2003) (citations omitted).

Under title VII, it is unlawful "for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). Our inquiry under title VII is "'whether the defendant intentionally discriminated against the plaintiff.'" Alvarado v. Tex. Rangers, 492 F.3d 605, 611 (5th Cir. 2007) (quoting Roberson, 373 F.3d at 651). A plaintiff can prove intentional discrimination through direct or circumstantial evidence. Id.

## A.

Direct evidence is evidence that, if believed, proves the fact in question without inference or presumption. Jones v. Robinson Prop. Group, 427 F.3d 987,

992 (5th Cir. 2005). To qualify as direct evidence, a comment must be directly related to sex-based animus; proximate in time to the termination; made by an individual with authority over the employment decision; and related to the employment decision. See Krystek v. Univ. of S. Miss., 164 F.3d 251, 256 (5th Cir. 1999) (internal quotation omitted).

Brockie contends that Hebert's comment satisfies this test and is direct evidence of animus toward women, such that her firing was intentional discrimination. We disagree. Although the evidence presented in Petty's deposition[1] satisfies the second and third prongs of the test, Hebert's statement does not directly evidence animus toward all women. If his statement evidences any animus at all, it is limited to streetwalkersSSactual prostitutesSSnot women in general. To believe otherwise would require drawing the inference that Hebert believes all women are streetwalkers, a plainly unreasonable inference not owed Brockie, even at the summary judgment stage. Additionally, drawing that inference would mean Hebert's comment was not direct, but circumstantial, evidence.

B.

In the absence of direct evidence, a plaintiff may use circumstantial evidence to demonstrate discrimination. Alvarado, 492 F.3d at 611. Per Alvarado, id., we analyze such cases under McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), which establishes a burden-shifting scheme whereby the plaintiff is first required to present a prima facie case of discrimination. The burden of production, not persuasion, then shifts and requires "the employer to articulate a legitimate, nondiscriminatory reason for its actions." Alvarado, 492 F.3d at 611. If the employer meets its burden, the prima facie case dissolves, and the plaintiff must establish that the employer's reason was either (1) a pretext for discrimina-

---

[1] We consider Petty's deposition, because we agree with the district court that nothing in it changes the outcome.

5

tion or (2) incomplete in that sex was still a factor in the decision.  Id.

### 1.

To establish a prima facie case, Brockie must present evidence that she (1) is within a protected class, (2) was qualified for the position, (3) was subject to an adverse employment action, and (4) was replaced by someone outside the protected class, or that others, similarly situated yet outside her protected class, were treated more favorably than she.  Bryan v. McKinsey & Co., Inc., 375 F.3d 358, 360 (5th Cir. 2004).  It is only contested whether Brockie was qualified for the position and whether men, similarly situated to her, were treated more favorably.

We agree with the district court that Gadol's complaints to Hebert did not render Brockie unqualified. We also agree that Brockie has failed to present evidence that similarly situated men were treated more favorably.  As the court noted, Brockie has not established that any of her proffered comparators were similarly situated.  There is no evidence that any of the other pathologists had more than one misdiagnosis, and it is uncontroverted that Brockie had at least two.  There is also no evidence that any of the other pathologists spent a significant amount of their day addressing personal issues using AmeriPath's resources.

Finally, Brockie argues that the other pathologists received favorable treatment in that each had at least one misdiagnosis, some resulting in litigation, yet they were not terminated.  The record contains no evidence of any such litigation; whether they were meritorious or frivolous suits is unknown.  It does not follow a fortiori that a doctor who has been sued has committed malpractice, nor does it follow that because Brockie's misdiagnosis did not result in litigation, it was not malpractice.

It is inappropriate for us to assess the relative severity of medical misdiag-

noses and determine whether they should have resulted in termination.  Thus, we decline to conclude that two pathologists who share nothing more in common than a single misdiagnosis are similarly situated, and we agree with the district court that there is no evidence that any of the doctors offered as comparators received more favorable treatment.

Brockie did not establish a prima facie case of discrimination under title VII.  The summary judgment is AFFIRMED.