No. 06-11204

REVISED MAY 28, 2008
IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 13, 2008

Charles R. Fulbruge III
Clerk

No. 06-11204

JUDIE C. GILLASPY

Plaintiff-Appellant

v.

DALLAS INDEPENDENT SCHOOL DISTRICT

Defendant-Appellee

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:04-CV-2055

Before KING, DeMOSS and SOUTHWICK, Circuit Judges.
PER CURIAM:[*]

Appellant Judie C. Gillaspy appeals the district court's order granting summary judgment to Dallas Independent School District (DISD) on her Title VII claims for gender discrimination and retaliation brought pursuant to 42 U.S.C. §§ 2000e–2000e-17. We affirm in part and reverse and remand in part.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

I.

Gillaspy is a twenty year employee of DISD's Custodial Services Department. After various promotions, she held the position of "Field Supervisor." As a Field Supervisor, Gillaspy was responsible for supervising several DISD campuses and over 200 employees. In March 2003, DISD outsourced the management of the Custodial Services Department to Aramark Service Master (Aramark). Aramark instituted a restructuring of the Custodial Services Department, which eliminated the Field Supervisor position. Two new positions, "Area Custodial Supervisor" (ACS) and "Facility Supervisor" were created. The ACS position closely resembled the former Field Supervisor position, with two notable differences. First, ACS worked at night; Field Supervisors worked during the day. Second, ACS were assigned to a smaller number of DISD campuses in specific areas; Field Supervisors were assigned to a larger number of campuses on an "as-needed" basis. An ACS reported directly to his or her individual Area Manager, an Aramark employee. Despite the similarities between the Field Supervisor and ACS positions, all existing Field Supervisors were required to apply for one of the eight new ACS positions. Of the six former Field Supervisors, only Gillaspy and four male employees applied. The remaining applicants were other DISD employees and non-employees.

In May 2003, ten individuals were interviewed by seven Area Managers. Gillaspy was the only female applicant selected to interview. Each Area Manager interviewed the applicants one-on-one and scored the applicant in five areas: technical knowledge, customer service, teamwork, portrayed image, and leadership. The scores were then submitted to Rica Hernaez, Resident District Manager and Executive Director of the Custodial Services Department, an Aramark employee who directly supervised the Area Managers. Hernaez also participated in the one-on-one interview process.

One of the Area Managers who conducted the interviews was Gillaspy's former supervisor, Marcus Miller. Gillaspy alleges that on the day of her

interview Miller stated that although she was qualified for the job, "only men" would be hired for the open ACS positions.[1] Miller denies making the statement. All eight positions were filled with male applicants. Gillaspy was the only Field Supervisor not selected.

DISD provided two reasons for Gillaspy's nonselection: Gillaspy received the lowest total interview scores, and Hernaez believed that Gillaspy lacked the supervisory, leadership, and motivational skills necessary for the ACS position. Hernaez stated that her opinion was based on having personally interviewed Gillaspy for an Area Manager position earlier in the year, and information received from Miller and another Area Manager who had previously worked with Gillaspy. Gillaspy was thus "reassigned" to the position of Facility Supervisor. In her capacity as Facility Supervisor, Gillaspy supervised only one campus.

In July 2003, Gillaspy filed a charge with the Equal Employment Opportunity Commission (EEOC) against DISD, alleging gender discrimination by not selecting her for an ACS position in May 2003 and her subsequent "demotion" to Facility Supervisor. Gillaspy also alleged that the employment decisions were made in retaliation for prior complaints she had made regarding discriminatory wage practices. She did not allege any "continuing violations." Following the filing of her EEOC charge, Gillaspy received her first negative performance review, which cited poor leadership and teamwork skills. Although Gillaspy received the review on July 15, 2003, the review was prepared on June 25, 2003, before she filed her EEOC charge.

In August 2003 and July 2004, additional ACS positions became available in the Custodial Services Department. Gillaspy applied for both positions, but was not re-interviewed or selected to fill them. DISD relied on Gillaspy's low interview scores and Hernaez's prior evaluation from her May 2003 interview

---

[1] There is a slight discrepancy in the record as to the exact statement allegedly made by Miller. In her brief to this court and in her personal diary, Gillaspy alleges that Miller stated that "they [DISD] only wanted to hire men." However, in her deposition, Gillaspy alleges that Miller told her that "only men would be hired" for the open positions.

to deny her the positions. In January 2004 and February 2004, Field Supervisor positions became available in the Maintenance Services Department. Gillaspy applied for and was denied these positions. DISD alleges that Gillaspy failed to meet the minimum requirements for these positions, which Gillaspy disputes. All of the positions were filled by male applicants, however Gillaspy did not amend her EEOC charge or file a new charge alleging discrimination or retaliation based on her nonselection for these positions.

On March 10, 2004, the EEOC found reasonable cause to believe that a violation of Title VII had occurred and issued Gillapsy a right-to-sue letter. On September 22, 2004, Gillaspy filed gender discrimination and retaliation claims against DISD pursuant to Title VII of the Civil Rights Act of 1964. Specifically, Gillaspy alleged gender discrimination for: (1) non-selection for ACS in May 2003, (2) demotion to Facility Supervisor in May 2003, (3) failure to promote to ACS in August 2003 and July 2004, and (4) failure to promote to Field Supervisor in the Maintenance Department in January 2004 and February 2004. Gillaspy also alleged retaliation for filing an EEOC claim by failing to promote her to open positions following the filing of her claim and for giving her a negative performance review.

The DISD moved for summary judgment on all of Gillaspy's claims. The district court granted the motion, dismissing all of Gillaspy's claims with prejudice. In regard to Gillaspy's discrimination claims, the district court concluded that Gillaspy failed to produce direct evidence of discrimination and that DISD offered legitimate, non-discriminatory reasons for its employment decisions, which Gillaspy failed to rebut with evidence of pretext or mixed motive. Gillaspy's retaliation claims were dismissed for a variety of reasons. First, in regard to the January 2004 and February 2004 Field Supervisor positions in the Maintenance Services Department, the district court concluded that Gillaspy's EEOC charge failed to put DISD on notice of her retaliation claims. Second, the district court held that even if DISD had adequate notice,

Gillaspy failed to establish a causal connection between her filing of the EEOC charge and DISD's employment decisions. Third, in regard to the August 2003 ACS position in the Custodial Services Department, the district court found that Gillaspy failed to establish the causal connection prong for a prima facie retaliation case because no one was actually hired for that position. Finally, the district court held that DISD offered a legitimate, nonretaliatory motive for its decision not to hire Gillaspy for the July 2004 ACS position—Gillaspy's low interview scores from May 2003—and that Gillaspy failed to establish a retaliatory motive.

Gillaspy timely filed her notice of appeal on October 23, 2006. On appeal, Gillaspy argues that the district court: (1) did not apply the correct summary judgment standard; (2) erred in finding no direct evidence and that Miller was not a person with authority over the challenged employment decision; (3) applied a "slap in the face" standard to her "clearly better qualified" argument; (4) erred in refusing to consider Miller's statement as circumstantial evidence of discrimination; and (5) erred in granting summary judgment on her retaliation claims because DISD failed to properly move for summary judgment on these claims.

## II.

As an initial matter, Gillaspy has failed to adequately brief the alleged error of the district court in disposing of her discrimination claims relating to the January 2004 and February 2004 Field Supervisor positions in the Maintenance Services Department and her retaliation claim based on the July 2003 negative performance review. As such, any challenge to the judgment with respect to those claims is waived. See FED R. APP. P. 28(a)(9) (requiring appellant's brief to include "the argument, which must contain . . . appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies."); Robinson v. Guar. Trust Life Ins. Co., 389 F.3d 475, 481 n.3 (5th Cir. 2004). Gillaspy has withdrawn her retaliation claim based on

the May 2003 ACS position and has not appealed her retaliation claims based on the January 2004 and February 2004 Field Supervisor positions, thus any challenge to the district court's judgment with respect to those claims is also waived. We now turn to the remaining claims properly before the court: Gillaspy's discrimination claims relating to her nonselection for the May 2003, August 2003, and July 2004 ACS positions and her August 2003 and July 2004 retaliation claims.[2]

A.    Standard of Review

This court reviews a district court's order granting summary judgment de novo, applying the same standard as the district court. Ballard v. Burton, 444 F.3d 391, 396 (5th Cir. 2006). Summary judgment is appropriate where there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, "the court must draw all reasonable inferences in favor of the nonmovant and may not make credibility determinations or weigh the evidence." See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150-51 (2000).

B.    Discrimination Claims

Gillaspy can demonstrate gender discrimination under Title VII through either direct or circumstantial evidence. See Rachid v. Jack in the Box, Inc., 376 F.3d 305, 309 (5th Cir. 2004). Gillaspy contends that there is direct and circumstantial evidence to support her discrimination claim. We turn first to Gillaspy's direct-evidence claim.

"Direct evidence is evidence that, if believed, proves the fact of

---

[2] We note that Gillaspy's demotion to facility supervisor in June 2003 resulted from her nonselection for one of the initial ACS positions; therefore, the demotion claim is part-and-parcel of the failure to promote claim and will not be analyzed separately.

discriminatory animus without inference or presumption." Sandstad v. CB Richard Ellis, Inc., 309 F.3d 893, 897 (5th Cir. 2002). When a plaintiff produces direct evidence of discrimination, "the burden of proof shifts to the employer to show that the same adverse employment decisions would have been made regardless of discriminatory animus." Rachid, 376 F.3d at 309. Gillaspy asserts that she produced direct evidence in the form of Miller's alleged comment that "only men" would be hired for the ACS positions. Miller denies making the statement, and there were no witnesses present for the exchange; however, for summary judgment purposes, the court must assume the truth of Gillaspy's claim. See Reeves, 530 U.S. at 150-51. The fact that only Gillaspy offers the statement does not preclude this evidence from being sufficient to survive summary judgment. See Fierros v. Tex. Dep't of Health, 274 F.3d 187, 195 (5th Cir. 2001).

When the plaintiff establishes that a party demonstrating discriminatory animus exercised leverage or influence over a formal decision maker, it is proper to impute the discriminatory animus to that formal decision maker. Russell v. McKinney Hosp. Venture, 235 F.3d 219, 226-27 (5th Cir. 2000). To succeed on her direct–evidence claim, Gillaspy must demonstrate that the formal decision maker, in this case Hernaez, "actually relied on the forbidden factor in making [her] decision." Haas v. ADVO Sys., Inc., 168 F.3d 732, 734 & n.2 (5th Cir. 1999). Gillaspy claims that she has introduced evidence that raises an inference that Miller exercised extraordinary influence over the other interviewers and Hernaez, and that his discriminatory animus affected the results of the interview process. However, because this evidence requires an inference, the district court did not err in finding no direct evidence of discrimination. See id.; Sandstad, 309 F.3d at 897-98.

Circumstantial evidence of discrimination is evaluated under the three-step McDonnell Douglas framework. Fierros, 274 F.3d at 191. First, Gillaspy must establish a prima facie case of discrimination, which "creates the

presumption that the employer unlawfully discriminated against the employee." Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (1981); Rutherford v. Harris County, Tex., 197 F.3d 173, 179 (5th Cir. 1999). DISD concedes that Gillaspy has established a prima facie case of discrimination on her May 2003, August 2003, and July 2004 claims. Thus, the burden shifted to DISD to produce evidence of a legitimate, nondiscriminatory reason for the disputed employment decision. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).

To satisfy its burden, DISD produced evidence that Gillaspy was not hired for the May 2003 ACS position because she received the lowest interview scores and Hernaez believed that Gillaspy lacked the necessary supervisory, motivational and leadership skills. Gillaspy concedes that DISD met its burden in regard to the May 2003 claim. DISD offered evidence that it relied on Gillaspy's performance during the May 2003 interview process to justify its decision not to hire Gillaspy for the July 2004 ACS position. Although DISD's proffered reason is questionable because it has not offered evidence that the man hired for this position was subjected to a similar interview process or that Gillaspy was reevaluated in any way, DISD need not convince the court it was actually motivated by its stated reasons at this stage. Burdine, 450 U.S. at 254. Finally, DISD offered departmental restructuring as a reason for not hiring Gillaspy for the August 2003 ACS position. Specifically, DISD has offered evidence that due to restructuring, the number of ACS positions was reduced from eight to seven, and thus no one was hired to fill the August 2003 position. This is a legitimate, nondiscriminatory reason.

Because DISD produced evidence of legitimate, nondiscriminatory reasons to rebut the presumption of discrimination, the burden shifted to Gillaspy to show that reason to be pretextual or part of a "mixed motive." See Rachid, 376 F.3d at 312. This required Gillaspy to show "either (1) that the defendant's reason is not true, but instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its

conduct, and another 'motivating factor' is the plaintiff's protected characteristic (mixed-motive alternative)." Id. (internal citations omitted).

To meet her burden, Gillaspy again offers Miller's comment that "only men" would be hired for the open ACS positions, arguing that Miller's comment indicates DISD's stated reasons for the challenged employment decisions are pretextual.[3] Use of Miller's alleged statement is governed by the four-part test set forth in Krystek v. University of Southern Miss., 164 F.3d 251, 256 (5th Cir. 1999). Gillaspy must establish that Miller's comment was: (1) related to a protected class of persons of which Gillaspy is a member, (2) proximate in time to the employment decisions at issue, (3) made by an individual with authority over the employment decisions at issue, and (4) related to the employment decisions at issue. Id. "Comments that are 'vague and remote in time' are insufficient." Haas, 168 F.3d at 733 (quoting Brown v. CSC Logic, Inc., 82 F.3d 651, 655-56 (5th Cir. 1996)).

The first and fourth requirements have been met. The second requirement has been met in regard to the May 2003 ACS position; however, Miller's comment is too remote in time from the July 2004 ACS position. See Auguster v. Vermilion Parish Sch. Bd., 249 F.3d 400, 405 (5th Cir. 2001) (finding a comment made "nearly a year" before the employment decisions at issue to be too remote); CSC Logic, 82 F.3d at 656 (finding a comment made sixteen months before the employment decision at issue to be too remote). Finally, to meet the third requirement, Gillaspy must establish only that Miller exercised influence or leverage over Hernaez sufficient to impute Miller's discriminatory animus to Hernaez. See Gee v. Principi, 289 F.3d 342, 346 (5th Cir. 2002). Because Gillaspy has produced evidence that Hernaez relied on Miller's recommendations in making her decision not to hire Gillaspy and there is evidence that Miller met with other members of the interview panel to discuss the applicants, we can

---

[3] Gillaspy has not sufficiently briefed this case under a mixed-motive analysis. The argument is, therefore, waived. See FED. R. APP. P. 28(a)(9).

infer that Miller exercised such influence. See Long v. Eastfield Coll., 88 F.3d 300, 307 (5th Cir. 1996) (inferring that a final decision-maker relied on the recommendation of supervisors who were alleged to be acting in retaliation because there was a genuine issue of material fact regarding whether the final decision maker acted independently). Miller's comment is thus evidence that DISD's legitimate, nondiscriminatory reason for its decision not to hire Gillaspy for the May 2003 ACS position is pretextual.

Gillaspy also offers evidence that she was "clearly better qualified" for the ACS positions than the men hired. The district court held that in order for Gillaspy to demonstrate she was "clearly better qualified," the disparities between her qualifications and those of the men hired "must virtually jump of the page and slap [the court] in the face." However, the "slap in the face" standard was rejected by the Supreme Court in Ash v. Tyson Foods, Inc. as "unhelpful and imprecise." 546 U.S. 454, 457-58 (2006). This court also recognized, before Ash, that the "slap in the face" standard was a "colloquial expression," which we defined more precisely to require the employee to show that the "disparities in qualifications [are] of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." Deines v. Tex. Dep't. of Protective & Regulatory Servs., 164 F.3d 277, 280-81 (5th Cir. 1999). We are confident that this standard comports with the directive in Ash to formulate a better standard to govern pretext claims based on superior qualifications, and we apply it here.

Gillaspy has produced evidence that in her twenty years of employment with DISD, she received a satisfactory rating or higher on all performance reviews, including two "performing above expectations" reviews, and one "clearly outstanding" review. Gillaspy worked in supervisory positions for ten years, the last three years as a Field Supervisor. Gillaspy has produced evidence that the Field Supervisor position is nearly identical to the ACS position and that she

had the necessary skills to serve in that position.[4] Further, Gillaspy does not rely on her qualifications alone. Two of the men hired for the May 2003 ACS position and one of the men hired for the July 2003 ACS position failed to meet the minimum education and experience requirements established by DISD. In light of Gillaspy's qualifications, this evidence is sufficient to create a fact issue as to whether DISD's nondiscriminatory reasons for its employment decisions in May 2003 and July 2004 ACS are pretextual.

Gillaspy has also produced evidence that Hernaez had not yet received the interview scores from the Area Managers at the time she made her selections for the May 2003 ACS positions. Specifically, Gillaspy argues that documents listing the applicants' scores was sent from DISD's human resources department to Hernaez two months after Hernaez had made her decision. DISD has offered no explanation for the timing of the documents transmittal. Gillaspy has thus created a fact issue on whether DISD's nondiscriminatory reason for not selecting Gillaspy for the May 2003 and July 2004 ACS positions are pretextual.

Finally, Gillaspy argues that DISD's claim—and the district court's conclusion—that no one was hired for the August 2003 ACS position due to restructuring is false. Gillaspy argues that Tyrone Haynes was hired as an ACS in October 2004, thus "filling" the August 2003 ACS position. Gillaspy offers no evidence other than her personal belief that Haynes was, in fact, hired to fill the specific position from over one year earlier. Because Gillaspy failed to rebut DISD's legitimate, nondiscriminatory reason for her nonselection of the August 2003 position, this claim was properly dismissed. See Laxton v. Gap, Inc., 333 F.3d 572, 578 (5th Cir. 2003)(A plaintiff must rebut each nondiscriminatory reason articulated by the employer).

C.    Retaliation Claims

---

[4] DISD offered evidence that Gillaspy was verbally counseled about the deficiencies in her supervisory skills; however her written evaluations do not indicate any deficiencies in those areas and Gillaspy denies ever being counseled about such matters.

DISD argues that Gillaspy failed to exhaust her administrative remedies on any claims arising after she filed her EEOC charge on July 7, 2003. It is undisputed that Gillaspy did not file a new charge or amend her existing charge to include her discrimination and retaliation claims for the August 2003 and July 2004 ACS positions, nor did Gillaspy allege a "continuing violation" in her charge. However, DISD's motion for summary judgment and brief in support did not argue that the discrimination and retaliation claims on appeal were unexhausted. DISD did not raise the exhaustion argument as to the claims on appeal until its reply brief in the district court. See John Deere Co. v. Am. Nat'l Bank, 809 F.2d 1190, 1192 (5th Cir. 1987) (noting that a district court may not grant summary judgment on grounds not advanced by the moving party). The district court dismissed her retaliation claims on the merits, concluding that Gillaspy's claims related to the August 2003 and July 2003 ACS positions failed because of the absence of causal-link evidence. Gillaspy argues that she was denied an adequate opportunity to respond to these arguments and that summary judgment was thus improper.

"[We] have not comprehensively identified all the circumstances under which a district court may rely on arguments and evidence presented for the first time in a reply brief, [but] we have stated that 'Rule 56(c) merely requires the court to give the non-movant an adequate opportunity to respond prior to ruling.'" Vais Arms, Inc. v. Vais, 383 F.3d 287, 292 (5th Cir. 2004). It is the practice of this court and the district courts to refuse to consider arguments raised for the first time in reply briefs. Peteet v. Dow Chem. Co., 868 F.2d 1428, 1437 (5th Cir. 1989); Senior Unsecured Creditors' Comm. of First RepublicBank Corp. v. FDIC, 749 F. Supp. 758, 772 (N.D. Tex. 1990). Although a number of months passed between the filing of DISD's reply brief and the district court's granting of summary judgment, there is no indication that Gillaspy requested an opportunity to respond, nor any indication that the district court invited or allowed Gillaspy an opportunity to file supplemental briefing. Because our

jurisprudence is less than clear, we think it prudent to reverse the summary judgment as to these claims and remand the case to the district court to allow Gillaspy to respond and offer additional argument and evidence if she has any.

## III.

For the foregoing reasons, we REVERSE the district court's order granting summary judgment in DISD's favor on Gillaspy's discrimination claims for failure to promote her to ACS in May 2003 and July 2004, and on her retaliation claims arising from the failure to promote her in August 2003 and July 2004. Otherwise, summary judgment is AFFIRMED. This matter is REMANDED for further proceedings consistent with this opinion. We express no views as to the ultimate merits of the claim; we conclude only that the matter should not be resolved on summary judgment.

AFFIRMED IN PART AND REVERSED AND REMANDED IN PART.